UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY SCOTT PROULX,<br><br>    Petitioner,<br><br>    v.<br><br>P. D. BRAZELTON, warden,<br><br>    Respondent.<br>_____/ | No. C 13-350 SI (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Bradley Scott Proulx filed this *pro se* action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Proulx challenges his conviction from the Santa Clara County Superior Court, following a negotiated plea deal. Proulx is currently serving a sentence of 25 years to life plus five years. The California Court of Appeal summarized the charges in the case:[1]

> Defendant [Proulx] was charged by information in February 2007 with commercial burglary (Pen. Code, §§ 459, 460, subd. (b)); two counts of reckless driving (Veh. Code, § 2800.1), residential burglary (Pen. Code, §§ 459, 460, subd. (a)), vehicle theft with a prior (Veh. Code, § 10851, subd. (a); Pen. Code, § 666.5), two counts of attempted carjacking (Pen. Code, §§ 664, 215), two counts of misdemeanor hit and run (Veh. Code, § 2002, subd. (a)), misdemeanor harming a peace officer's dog (Pen. Code, § 600, subd. (a)), and misdemeanor resisting arrest (Pen. Code, § 148, subd. (a)). The information also alleged defendant had suffered five prior strike convictions (Pen. Code, §§ 667, subds.

---

[1] The California Court of Appeal omitted the underlying facts of the case as irrelevant to the issues presented in Proulx's appeal, and this court will do the same.

(b)-(I), 1170.12), served two prior prison commitments (Pen. Code, § 667.5, subd. (a)(1)), suffered one prior serious felony conviction (Pen. Code, § 667, subd. (a)), and was released on bail in another case when he committed the alleged felonies (Pen. Code, § 12022.1).

Cal. Ct. App. Opinion, p. 1-2 (Docket No. 4, Ex. B).

In January 2008, the state trial court determined that Proulx was incompetent to stand trial and suspended criminal proceedings while Proulx was committed to the state hospital for treatment. In September 2008, Proulx was found to be competent and criminal proceedings were reinstated. The self-representation requests at issue here were made in December 2008 and February 2009. In December 2009, Proulx entered a negotiated plea of guilty to felony carjacking, and the four misdemeanors alleged in the information. Proulx also admitted the sentence enhancement allegations of the prior strikes, the prison terms, the prior serious felony conviction, and being on bail at the time of the commission of the crimes. Proulx unsuccessfully requested to withdraw his plea at his sentencing hearing in February 2010. The trial court then sentenced Proulx to 25 years to life on the carjacking charge, plus five years for the prior serious felony enhancement. The remaining enhancements and charges were dismissed.

Proulx appealed. The California Court of Appeal affirmed Proulx's conviction in a reasoned decision. The California Supreme Court summarily denied Proulx's petition for review.

Proulx then filed this action for writ of habeas corpus asserting that the trial court violated his right to self-representation. This court issued an order to show cause why the petition should not be granted. Respondent filed an answer and Proulx filed a traverse. The case is now ready for review on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Santa Clara County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claim presented in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

**DISCUSSION**

A.   Faretta Claim

    I.   Background

In his federal habeas petition, Proulx contends only that the trial court improperly denied his requests to represent himself, in violation of his right to self-representation. *Faretta v. California*, 422 U.S. 806 (1975). He argues that his requests were unequivocal and therefore should not have been denied on the basis that they were not unequivocal.

Proulx's first mention of self-representation was on December 30, 2008, at a hearing on a *Marsden* motion to discharge his public defender, Thompson Sharkey. At the hearing, Proulx expressed dissatisfaction with the lack of investigation conducted by Sharkey and with his unresponsiveness to Proulx's requests for discovery. Proulx said that Sharkey was "completely disengaged" and had failed to communicate with him. He said: "I'm looking at a lot of time, and I'd like some counsel I'm comfortable with, that I can work with, that I trust." RT 508. Proulx further stated that "if it comes down to it, I'll go pro per rather than have [Sharkey] dump me in the middle of this trial [...]." RT 508. Proulx told the court that he was "just frustrated" and that he would prefer to have his original attorney, Mr. Rodriguez, back on the case. RT 509. After acknowledging Proulx's frustrations and allowing Sharkey time to respond to them,[2] the trial judge denied Proulx's *Marsden* motion. The judge encouraged Proulx to work with Sharkey to get the discovery and communication that Proulx felt was lacking. However, Proulx emphasized to the court that he could not work with Sharkey and asked: "can I represent myself?" RT 524. The court informed Proulx that he had a right to represent himself, but that the request needed

---

[2] Sharkey responded that his predecessor already had provided the requested discovery to Proulx and already had thoroughly worked up the file. RT 513, 516.

4

to be made in a motion when the prosecutor was present. The court also warned Proulx of the difficulties of proceeding *pro per*. Proulx responded: "I would rather go to my doom in my own hands than deal with" Sharkey. RT 525.

On February 20, 2009, Proulx filed a form motion to proceed in *pro per*. Docket # 5 at 4, 18-26 (Traverse). A hearing was held on this motion on February 25, 2009, and the court determined that Proulx's request for self-representation was based on his claim that Sharkey was incompetent. Thus, the court shifted to a *Marsden* inquiry before considering Proulx's request for self-representation. Proulx expressed to the court his continued frustration over issues of discovery, investigation, and communication with Sharkey, and stated: "I'm willing to represent myself rather than go with this particular attorney [Sharkey]." RT 532. The court encouraged Proulx to keep working with Sharkey and the discussion continued, with Proulx emphasizing his unwillingness to do so. Proulx stated:

> I cannot work with Mr. Sharkey, and I will not work with Mr. Sharkey. I'm absolutely steadfast on that. I feel – I feel he's working against me in more situations than not. And I – with this much time, I just – I can't even sleep thinking about it. It's so upsetting. So I would have to say I absolutely cannot work with Mr. Sharkey.

RT 535. At the close of the discussion, the court continued the hearing in order to do research on the *"Marsden* request / *Faretta* request" and asked Proulx to keep an "open mind" about continuing with counsel. RT 537, 538. Proulx agreed to keep an open mind and think about things, but he also said: "I just want to articulate where I'm at so you know I absolutely will not go with Mr. Sharkey. And I'm prepared to take it on myself and accept the responsibilities and live with 200 years to life as opposed to having Mr. Sharkey represent me and only go at it half-heartedly." RT 539.

When the hearing resumed two days later, on February 27, 2009, the trial court denied Proulx's request to represent himself at the start of proceedings. The court elaborated its reasoning:

> The law is very clear that you have the right to proceed to represent yourself. It's a constitutional right, but my stumbling points and the analysis on this was that it has to be done clearly and unequivocally. So as a result of the time I had out for my own purposes, I was able to find a couple of cases that reflected on what my concern was. And it's the case of People versus Marshall at 15 Cal. 4th, page 1 and at page 21. The Supreme Court

5

of our state indicated the following language:

> Several lower courts have declared that a motion made out of a temporary whim, which yours is not, or out of annoyance or frustration is not unequivocal, even if the defendant has said – has said he or she seeks self representation. And there are a list of cases that the court cites that are just situations exactly like what you're looking at that you're frustrated with the representation you have, that you're running into what you perceive to be blocks in careful representation, and that is not an unequivocal waiver that the Court can acknowledge. And I'm going to deny it on that basis.

RT 544-45. When Proulx asked the court how he could "file the motion correctly" so he could represent himself, RT 545, the judge responded: "I cannot tell you how to file a motion that would have this component part because everything you just told me indicates that it's more of a personal thing than anything else." RT 546. The judge encouraged Proulx to keep an open mind, and made a plan for Sharkey's paralegal to visit Proulx. RT 548.

The record discloses no further request for self-representation after the February 27, 2009 hearing. Proulx entered his guilty plea on December 8, 2009, at which time he was represented by a new public defender, RT 553, who he described at sentencing as a "wonderful attorney." RT 573.

On review, the California Court of Appeal rejected Proulx's *Faretta* claim in a reasoned opinion. The court focused on Proulx's statements at the December 2008 and February 2009 hearings, and concluded that the trial court was correct in finding Proulx's request for self-representation equivocal. Cal. Ct. App. Opinion, p. 6-8. The court cited to a number of California Supreme Court cases wherein defendants made similar statements expressing dissatisfaction with their counsel that were determined to be insufficiently unequivocal to assert the *Faretta* right. *Id.* at 8. The court elaborated on its conclusion denying Proulx's *Faretta* claim:

> In the context of the entire proceedings, we do not view defendant's statements at these hearings, either individually or collectively, [as] unequivocal assertions of his *Faretta* rights. Rather, it is clear defendant was repeating his belief that his appointed attorney was incompetent, did not have his best interest in mind, and was not adequately representing him. Defendant expressed that he would prefer to represent himself, and accept whatever consequences that might bring, than continue being represented by Mr. Sharkey. [...]
>
> [B]ased upon our review of the entire record, and "draw[ing] every reasonable inference against waiver of the right to counsel," we conclude that defendant did not

6

> unequivocally invoke the right to self-representation. Accordingly, we reject defendant's claim of *Faretta* error.

*Id.* at 6-8 (citations omitted).

II. Analysis

A criminal defendant has a Sixth Amendment right to represent himself. *See Faretta v. California*, 422 U.S. 806, 818-19 (1975). The decision to represent oneself and waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not for purposes of securing delay. *See id.* at 835; *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994); *Adams v. Carroll*, 875 F.2d 1441, 1444 & n.3 (9th Cir. 1989). The only requirement in question here is whether Proulx's request was unequivocal.

*Faretta* did not set out a standard to determine whether a self-representation request is unequivocal. Lower courts have explored the issue, however. Requiring that the request for self-representation be unequivocal ensures that the defendant does not inadvertently waive his right to counsel and prevents him from taking advantage of the mutual exclusivity of the rights to counsel and self-representation. *See Adams*, 875 F.2d at 1444. If a defendant equivocates, he is presumed to have requested the assistance of counsel. *See id.* A petitioner cannot show a factual finding is clearly erroneous by merely disagreeing with the state court's interpretation of the record but not pointing to any material fact that the court failed to consider in reaching its determination. *See DeWeaver v. Runnels*, 556 F.3d 995, 1006-07 (9th Cir. 2009).

A *Faretta* request is not considered equivocal merely because defendant chooses self-representation rather than to be represented by counsel he believes to be incompetent. *See United States v. Allen*, 153 F.3d 1037, 1041 (9th Cir. 1998); *see also United States v. Hernandez*, 203 F.3d 614, 617-18 (9th Cir. 2000), *overruled on other grounds by Indiana v. Edwards*, 554 U.S. 164 (2008) (defendant's statement to judge, "if you can't change [my attorney], I'd like to represent myself" may have been conditional, but it was not equivocal). However, a defendant's expression of a clear preference for receiving new counsel over representing himself may be an indication that the request is equivocal. *See Stenson v. Lambert*, 504 F.3d 873, 883 (9th Cir.

2007).

This court cannot say that the state appellate court's determination that Proulx equivocated on his request to represent himself was an unreasonable application of *Faretta*. The court views Proulx's *Faretta* request as an effort to steer himself toward a new attorney rather than to represent himself, especially in light of the discussion at the two *Marsden* hearings. At first, Proulx explicitly asked that his prior attorney, Mr. Rodriguez, be placed back on the case, but the trial court explained that it could not order the public defender's office to do that. Proulx formally moved to represent himself only after denial of his *Marsden* motions. Proulx's colloquy with the court during the December 2008 and February 2009 hearings shows that his request to represent himself was the product of frustration with a particular defense attorney more than any genuine desire to represent himself. *Cf. Stenson*, 504 F.3d at 883 (state court's determination that defendant had not made an unequivocal request was not an unreasonable determination of the facts where defendant made several statements that he really did not want to represent himself but felt the court and his existing counsel were forcing him to do so, and defendant had tried to locate another attorney, among other relevant acts).

Proulx correctly notes that some courts have distinguished between an equivocal request and a "conditional" request, *see, e.g., Adams*, 875 F.2d at 1445, but the distinction does not help him under the circumstances. Circuit level authority does not suffice for relief under § 2254(d). *See Marshall v. Rodgers*, 133 S. Ct. 1446, 1451 (2013). Under § 2254(d), habeas relief depends on the holdings of the U.S. Supreme Court. *Faretta* is the only relevant holding, and that case does not elaborate on any standard for determining whether a request is unequivocal.

The record amply supports the state appellate court's conclusion that Proulx sought self-representation out of the frustration associated with the denial of his requests to discharge his appointed attorney and that Proulx was seeking to impress upon the court just how dissatisfied he was with his present counsel. Because *Faretta*'s holding is a generalized one, the state courts have more leeway in their application of it. *See Yarborough v. Alvarado*, 541 U.S. 541 U.S. 652, 664 (2004). The state appellate court's determination that Proulx's statements did

not unequivocally invoke the right to self-representation was not an unreasonable application of the holding of *Faretta*.

Proulx also argues that the rejection of his claim was "contrary to" *Faretta* because the California Court of Appeal decided his case "differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *See* Docket # 5 at 11-13, citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The court disagrees that Proulx's facts are materially indistinguishable from those in *Faretta*. Unlike Proulx, Faretta did not couch his request to represent himself entirely in terms of his disdain for the particular public defender assigned to his case; Faretta thought *no* public defender would suffice, as the whole office was overloaded with work. *See Faretta*, 422 U.S. at 807 ("Questioning by the judge revealed that Faretta had once represented himself in a criminal prosecution, that he had a high school education, and that he did not want to be represented by the public defender because he believed that that office was 'very loaded down with . . . a heavy case load.'") Nothing in *Faretta* shows an effort by the defendant to steer himself to a different public defender. In contrast to *Faretta*, the record in Proulx's case leaves one with the distinct impression that, had another public defender been offered to him, Proulx readily would have taken him or her instead of self-representation. The state court's rejection of Proulx's claim was not contrary to *Faretta*.

B.      The Guilty Plea Bars The *Faretta* Claim

The *Faretta* claim also must be rejected for a separate and independent reason. Pre-plea constitutional violations cannot be considered in a federal habeas action brought by a petitioner who pled guilty. *See Haring v. Prosise*, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) (refusing to consider contention that petitioner's attorneys were ineffective because they failed to attempt to prevent the use of his confession as pre-plea constitutional violation). The only challenges left open in federal habeas corpus after a guilty plea are the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead. *Hill v.*

*Lockhart*, 474 U.S. 52, 56-57 (1985). Pre-plea events would be relevant only as they affected counsel's advice to the petitioner to plead guilty. The *Faretta* claim cannot support habeas relief because it does not pertain to the decision to plead guilty.

C. <u>A Certificate Of Appealability Is Granted</u>

Petitioner has "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and reasonable jurists would find debatable the district court's assessment of petitioner's *Faretta* claim. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is GRANTED on that claim. Petitioner is cautioned that the court's ruling on the certificate of appealability does not relieve him of the obligation to file a timely notice of appeal if he wishes to appeal.

## CONCLUSION

The petition for writ of habeas corpus is denied on the merits. The clerk will close the file.

IT IS SO ORDERED.

DATED: November 5, 2013

SUSAN ILLSTON
United States District Judge